STATE OF WEST VIRGINIA

*In re* A.C.

No. 18-1063 (Hardy County 18-JA-17)

FILED

April 19, 2019

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother D.W., by counsel Jeffrey N. Weatherholt, appeals the Circuit Court of Hardy County's October 31, 2018, order terminating her parental rights to A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the child, also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in proceeding to the dispositional hearing without the DHHR's having filed a family case plan or providing proper notice, failing to issue the final dispositional order within ten days of the hearing, finding that the DHHR was not required to make reasonable efforts to preserve the family, denying her motion for a post-adjudicatory improvement period, and terminating her parental rights upon erroneous findings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

In May of 2018, the DHHR filed a child abuse and neglect petition against the parents alleging physical abuse of then four-month-old A.C. Specifically, the DHHR alleged that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

parents took the child to the hospital for bruising to the child's buttocks, neck, face, side, and chest, as well as retinal hemorrhaging.[2] Medical personnel opined that the injuries were the result of abuse given the child's age, immobility, lack of medical explanation, and the various stages of healing of the injuries. The father admitted to causing the injuries; however, petitioner denied abuse and provided other explanations for the injuries such as rolling on top of the baby while co-sleeping. Petitioner waived her preliminary hearing.

In June of 2018, the circuit court held an adjudicatory hearing wherein petitioner offered to stipulate to certain allegations contained in the petition. However, the DHHR and the guardian objected because petitioner had "prevaricated every step of the way about what happened." According to the guardian, petitioner blamed the doctors for the bruising to the child's head, stated that the child had a preexisting liver problem, and claimed the police coercively obtained the father's confession. As a result, the guardian and the DHHR objected to petitioner's limited stipulation, and the matter proceeded to a contested adjudication, wherein the child's pediatrician testified regarding the multiple bruises in different stages of healing on the child's body. Test results showed that no "organic reason or health condition" caused the bruising, but petitioner denied trauma or injury to the child, and blamed a stroller's restraints for causing the bruises to the child's chest. When the pediatrician asked petitioner why she did not immediately present to the hospital upon noticing the bruises, petitioner responded that she had similar bruising as a child and a Child Protective Services ("CPS") referral was made as a result, and that she did not want that to happen due to this incident. After the pediatrician's testimony, the hearing was continued.

When the adjudicatory hearing reconvened later in July, the parties permitted petitioner to stipulate that she failed to recognize the severity of the injury to the child, did not respond appropriately to medical evidence that was placed before her regarding the injuries to her child, and should have taken the child to the emergency room immediately upon noticing the bruises. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The DHHR then presented the testimony of a CPS worker in opposition to petitioner's oral motion for an improvement period. The CPS worker testified that petitioner improperly attempted to have the child placed with petitioner's mother. Petitioner was involved in a CPS case as a child in 2004, wherein she reported that her mother had hit her, causing bruising on her arm.[3] The CPS worker stated that, despite this substantiated abuse by petitioner's mother, petitioner recanted her

---

[2]Throughout the proceedings below, petitioner claimed she saw the bruises only one day prior to taking the child to the hospital. The parties contest whether petitioner presented to the hospital for an already-scheduled appointment with the child's pediatrician or whether she presented as an emergency. In any event, after presenting to Grant Memorial Hospital in Petersburg, West Virginia, the child was transferred to J.W. Ruby Memorial Hospital in Morgantown, West Virginia.

[3]Abuse and neglect proceedings were not instituted against petitioner's mother. Rather, a safety plan was implemented, and petitioner's parents successfully completed the same.

childhood claims of abuse at an administrative law hearing initiated by her mother in early July. As a result, the hearing officer overturned that determination, essentially removing the barrier to placement of the child in petitioner's mother's home. The worker testified that she had concerns about petitioner being granted an improvement period given her actions of recanting the abuse against her mother in order to facilitate the child's placement and her various excuses as to the cause of the child's bruising. At the conclusion of this testimony, the circuit court held petitioner's motion for an improvement period in abeyance.

In August of 2018, the circuit court held a dispositional hearing wherein all of the parties requested to continue the proceedings so that petitioner could undergo a polygraph exam. Petitioner testified that she was "done with the lies" and that her mother coerced her into presenting false testimony at the administrative law hearing. Petitioner, by counsel, agreed to continuing the hearing generally to obtain a polygraph. The guardian asked, "Should we just set that [hearing] for status so that we don't have to worry with the [Family] Case Plan until we –" to which petitioner's counsel immediately responded "[t]hat's fine." As such, the circuit court continued the hearing generally pending the completion of petitioner's polygraph exam.[4] The circuit court also spent significant time on the record discussing placement for the child, including with petitioner's grandmother, M.C. However, home studies needed to be completed and the child was continued in her foster placement.

The circuit court held a hearing in September of 2018, wherein the DHHR requested to present the testimony of a witness for the purpose of disposition. Petitioner moved the circuit court to continue the hearing because it had been noticed as a status hearing, not a dispositional hearing. The DHHR objected, as it had secured the presence of a doctor who had traveled a long distance to testify that day. The circuit court ordered that the DHHR could proceed for the limited purpose of presenting the doctor's testimony and reserved petitioner's right to recall the witness at a later date if necessary.

The doctor testified that, upon the child's presenting to the hospital in Petersburg, West Virginia, she was transferred to a hospital in Morgantown, West Virginia. There, he examined the child, reporting that the bruising had occurred at different times based on the coloration, and opined that the oldest bruise was possibly around two weeks old. The doctor testified that petitioner claimed the child bruised easily, could have incurred the bruising during co-sleeping, and the abrasion was caused by a car seat. Petitioner denied any form of abuse; however, the doctor opined that the injuries to the child were attributable to non-accidental trauma.

On October 3, 2018, the DHHR filed its case plan recommending termination of petitioner's parental rights. The dispositional hearing was held on October 12, 2018. The circuit court took judicial notice of all prior testimony. The DHHR presented the testimony of several

---

[4]Petitioner completed a polygraph but later objected to the admission of the results into evidence. The circuit court ruled the results were inadmissible. However, the circuit court ordered that the testimony of the polygraph examiner regarding an interview with petitioner performed around the same time was admissible. That testimony was presented at a later hearing.

witnesses who testified regarding petitioner's denial of abuse to the child. Testimony established that petitioner continued to maintain that she had no knowledge of the bruising prior to presenting to the hospital. Further, petitioner remained evasive, blamed others, and failed to accept responsibility for her actions. While she independently obtained and underwent a psychological evaluation in June of 2018, petitioner did not give the DHHR the opportunity to provide any relevant information to the evaluating psychologist.[5] In any event, petitioner failed to follow through with any of the psychologist's recommendations, such as counseling. Lastly, petitioner continued to live with her mother, despite her substantiated abuse. As such, the DHHR recommended termination of petitioner's parental rights.

Petitioner testified on her own behalf. When asked whether she had noticed the child's bruising prior to the day before bringing her to the hospital, she stated "[w]hen [A.C.] was a baby, we would pat her back, and she would get a bruise in the center of her back just from patting her." The circuit court asked petitioner whether she now suspected those bruises were from the father, and she responded that he "might have hit her." Petitioner further testified that she had independently sought a psychological evaluation and complied with the recommendations. However, upon further examination, petitioner admitted that she had only attended one counseling session. Lastly, petitioner admitted that she had been sexually abused as a child by her grandmother's then-boyfriend. Petitioner confirmed that the same grandmother was seeking custody of the child. The circuit court asked petitioner, "I mean, do you not see the problem there?" Petitioner responded, "Yeah, I could see it." Nevertheless, petitioner insisted she would comply with an improvement period and requested the same.

The circuit court entered a dispositional order later in October of 2018, denying petitioner's request for an improvement period and terminating her parental rights. In explaining its reasoning, the circuit court found that petitioner was unable to provide a sustainable, safe home for the child. Throughout the case, petitioner was resistant to suggestions that the child was abused and provided several other incredible causes for the bruises. Moreover, petitioner admitted to lying during an administrative law hearing to facilitate the child's placement with her mother and failed to disclose that her grandmother failed to protect her from sexual abuse as a child while knowing that same grandmother was also seeking placement of her child. The circuit court determined that petitioner's minimization and denial of the issue boded for poor prognosis, and that her failure to identify the issues rendered her problem untreatable. Further, her decisions during the proceedings showed that she was not protective of her child and was unduly influenced to cater to her family. Finding that the DHHR was not required to make reasonable efforts to preserve the family, the circuit court denied petitioner an improvement period, stating she failed to prove that she would comply with the same. Lastly, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the

[5]Petitioner never submitted the psychological evaluation report into evidence during the proceedings below.

4

near future and that termination was in the child's best interests. It is from the October 31, 2018, dispositional order that petitioner appeals.[6]

**Discussion**

I.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

II.

On appeal, petitioner argues that the circuit court erred in finding that that the DHHR was not required to make reasonable efforts to preserve the family. According to petitioner, none of the factors set forth in West Virginia Code § 49-4-604(b)(7) were present and, therefore, the DHHR should have been required to make reasonable efforts to preserve her family. Relatedly, petitioner argues that she should have been granted an improvement period. She states that she demonstrated that she was likely to comply with an improvement period because she acknowledged the abuse of the child by her father, acknowledged her own role in the abuse by stipulating to certain allegations against her, took the initiative to schedule and complete her own psychiatric evaluation, and arranged for her own counseling and therapy services in accordance with the recommendation of her psychological evaluation. As such, petitioner argues that her

---

[6]The father voluntarily relinquished his parental rights during the underlying proceedings. The child is currently placed in a foster home and the DHHR is addressing several family members' requests for placement of the child. The permanency plan is adoption pending determination of a proper placement for the child.

prospect of parental improvement was not merely speculative because she took clear, identifiable steps towards addressing and remedying the abuse and neglect. Having reviewed the record, we find no merit in petitioner's arguments.

West Virginia Code § 49-4-604(b)(7) sets forth that

[f]or purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines:

(A) The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, *but are not limited to*, abandonment, torture, chronic abuse and sexual abuse.

(Emphasis added). While petitioner is correct that none of the listed circumstances are present in her case, she fails to acknowledge that this list is non-exclusive. Indeed, the text of the statute states that aggravated circumstances "are not limited to" the listed circumstances. Here, the circuit court found that reasonable efforts were not required in this instance given the age of the child, petitioner's prevarication throughout the entirety of the proceedings, and the fact that the circuit court was not required to exhaust every speculative possibility of parental improvement. The record is clear that, at nearly every step of the proceedings, petitioner failed to demonstrate a protective nature towards the child. She failed to take the child to the doctor immediately upon seeing the extensive bruising, provided a myriad of incredible excuses for the bruising, initially refused to acknowledge the father's confession, and helped her family seek placement of the child despite her mother's prior substantiation of child abuse and petitioner's own allegations of the grandmother's failure to protect her from sexual abuse as a child. Accordingly, under the specific facts of this case, we decline to find the circuit court erred in determining that reasonable efforts were not required in this situation.

Further, petitioner failed to demonstrate that she was entitled to an improvement period. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Contrary to petitioner's arguments, she did not demonstrate that she was likely to fully participate in an improvement period. While petitioner contends that she acknowledged the abuse and neglect of the child, the record demonstrates that petitioner still had difficulty acknowledging the father's abusive behavior towards the child as of the dispositional hearing. Indeed, during her testimony, petitioner claimed the child had previously bruised from simply

6

being patted on the back and only conceded that the father "might have hit" the child after prompting from the circuit court. Accordingly, petitioner's assertions that she acknowledged the conditions of abuse lack merit in light of that testimony and any improvement period would have been futile. *See W. Va. Dep't of Health and Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d 865, 874 (1996) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense."). Further, while it is true that petitioner arranged and completed a psychological evaluation, the report was never admitted into evidence. Although petitioner avers that the evaluation report recommended an improvement period, we note that this recommendation was not based on the totality of the evidence, as petitioner denied the DHHR the opportunity to provide relevant information, and further point out that she admittedly failed to comply with any of the other recommendations. We have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Given petitioner's limited acknowledgement of the issues and failure to follow through with the recommendations of a psychological evaluation that she herself initiated, we find no error in the circuit court's decision to deny her an improvement period as it did not appear likely that she would comply with the terms and conditions of the same.

III.

Petitioner next argues that the circuit court erred in proceeding to disposition on September 25, 2018. Specifically, she argues that the DHHR did not file a family case plan, a list of witnesses, a summary of anticipated testimony, or a list of issues of law and fact to be presented at the dispositional hearing five days prior to that hearing, as required by Rules 29[7] and 30[8] of the Rules of Procedure for Child Abuse and Neglect Proceedings. According to petitioner,

---

[7]Rule 29 of the Rules of Procedure for Child Abuse and Neglect Proceedings sets forth that "[c]opies of the child's case plan shall be provided to the parties, their counsel, and persons entitled to notice and the right to be heard, at least five (5) judicial days prior to the disposition hearing."

[8]Rule 30 of the Rules of Procedure for Child Abuse and Neglect Proceedings sets forth, in relevant part, that "[a]t least five (5) judicial days prior to the disposition hearing, each party shall provide the other parties . . . a list of possible witnesses, with a brief summary of the testimony to be presented at the disposition hearing, and a list of issues of law and fact."

the DHHR did not file these documents until October 3, 2018, after the September dispositional hearing. She further avers that the circuit court erred in taking the testimony of a doctor when the matter had been noticed only as a status hearing, not as a dispositional hearing. We find that petitioner is entitled to no relief in this regard.

While petitioner is correct that the family case plan and other required documents were not filed until after the September of 2018 hearing, the record indicates that she, by counsel, agreed to such. In August of 2018, during a discussion of scheduling the next hearing for September 25, 2018, the guardian asked: "Should we just set that [hearing] for status so that we don't have to worry with the [Family] Case Plan until we –" to which petitioner's counsel immediately responded "[t]hat's fine." As such, it is clear that petitioner agreed that the family case plan would not need to be filed before the September hearing.

Moreover, we find no error in the circuit court's decision to permit the DHHR to present the testimony of the doctor at the September of 2018 hearing for the purpose of disposition. The circuit court noted that the doctor had traveled a significant distance to attend and permitted the hearing to proceed for the limited purpose of taking his testimony. Petitioner fails to demonstrate how she was prejudiced by the circuit court's decision to permit the testimony of the doctor at the September of 2018 hearing. The hearing was limited to presenting only the doctor's testimony, petitioner was permitted to cross-examine the witness, and she was informed that she could recall the witness at the October of 2018 dispositional hearing, should she need to. Accordingly, we find that she is entitled to no relief in this regard. Further, because the circuit court only proceeded for the limited purpose of hearing the doctor's testimony on September 25, 2018, we find no error in the filing of the documents required by Rule 30 of the Rules of Procedure for Child Abuse and Neglect Proceedings on October 3, 2018, which was more than five days in advance of the October 12, 2018, dispositional hearing.

IV.

Petitioner also assigns as error the circuit court's decision to terminate her parental rights. According to petitioner, the circuit court erred in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future given the fact that she independently sought a psychological evaluation and arranged counseling. Petitioner also takes issue with certain findings made by the circuit court, arguing that it should not have found that she "demonstrated an inadequate capacity to solve the problems of abuse and neglect" when she was not granted an improvement period to show that she could do so. Petitioner avers that the issue is that she "is guilty of not believing fast enough that her fiancé, the man she loved and the father of her daughter, could or would perpetrate this kind of abuse and bruising to his own child." Moreover, she argues that medical evidence indicates that the child showed no signs of bruising at a doctor's appointment only eight days prior to the day she brought the child in for the bruises, indicating a lack of chronic abuse. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. No reasonable likelihood that the conditions of neglect or abuse can be substantially

corrected means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(c).

We find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner failed to demonstrate a protective nature towards the child by minimally acknowledging the conditions of abuse and neglect and seeking inappropriate placements for the child. First, the record is clear that the bruises on the child's body were at different stages of healing. Even when considering petitioner's argument that all of the bruises were less than eight days old, the fact remains that the bruises were caused at different times, yet petitioner continues to maintain that she noticed them only one day prior to presenting to the hospital. Given the medical evidence, her claims were simply not credible. Second, petitioner catered to her family's desires to the detriment of the child. Petitioner recanted her childhood reports of abuse by her own mother during an administrative law hearing in order to facilitate placement of the child. Further, despite knowing that her grandmother was also seeking placement of the child, petitioner failed to disclose that that same grandmother failed to protect her from sexual abuse as a child. Third, while petitioner asks this Court to look favorably on the fact that she independently obtained a psychological evaluation, she failed to admit that report into evidence and further failed to follow through with the recommendations of the same report upon which she relies, only attending one counseling session. This evidence demonstrates that petitioner possessed an inadequate capacity to solve the problems of abuse and neglect on her own, and the circuit court properly determined that termination of her parental rights was in the child's best interest. As such, petitioner is entitled to no relief in this regard.

V.

Petitioner's final assignment of error concerns the circuit court's failure to enter the dispositional order within ten days of the hearing. Petitioner cites only to Rule 38 of the Rules of Procedure for Child Abuse and Neglect Proceedings, which states that "[w]ithin ten (10) days of conclusion of the hearing, the court shall enter a final disposition order." We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Here, petitioner failed to provide any argument regarding this assignment of error or citation to authority establishing that this procedural error warrants reversal. Given that petitioner failed to establish that she suffered any prejudice here, we find that that she is entitled to no relief.

9

## VI.

Lastly, because a permanent placement has not yet been found for A.C., this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

## <u>Conclusion</u>

For these reasons, we find no error in the decision of the circuit court, and its October 31, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

11